UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **DOUGLAS RONALD JONAS,** | **CIVIL ACTION NO. 5:14-155-KKC** |
| **Plaintiff,** | |
| V. | **MEMORANDUM OPINION AND ORDER** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 12; DE 14). The plaintiff, Douglas Ronald Jonas, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

**I.    OVERVIEW OF THE PROCESS**

The Social Security Act and corresponding regulations provide that the administrative law judge ("ALJ") must follow a five-step sequential process in determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

    2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

    3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

    4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

    5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

    Through the first four steps of the analysis, the burden of proof is on the claimant to show that he is disabled; if the ALJ reaches step five without finding that the claimant is disabled, the burden of proof shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). In order for the claimant to satisfy his burden of proof, he must provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II.    PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

    Jonas filed his claim for DIB on April 4, 2011, alleging an onset date of January 1, 2011. (Tr. at 217.) The agency denied his application initially and on reconsideration. (Tr. at 112, 127.) Jonas requested review by an ALJ, and the ALJ held a hearing on November

7, 2012. (Tr. at 36–97.) The ALJ subsequently issued an unfavorable decision on December 21, 2012. (Tr. at 19–31.)

At the time the ALJ rendered his decision, Jonas was 46 years old. (Tr. at 45.) He has an eighth grade education; he repeated the ninth grade twice and did not complete a third attempt. (Tr. at 45, 276.) Jonas previously worked as a self-employed handyman, a maintenance man, and a welder. (Tr. at 47–49, 52–57.) He alleges disability due to various musculoskeletal pains, migraine headaches, and mental disorders. (Tr. at 98, 210.) Jonas meets the insured status requirements of the Social Security Act through December 31, 2015. (Tr. at. 24.)

At the first step, the ALJ found that Jonas has not engaged in any substantial gainful activity since his alleged onset date of January 1, 2011. (Tr. at 24.) At the second step, the ALJ concluded that Jonas has the following severe impairments: "bilateral carpal tunnel syndrome; positive rheumatological arthritis factor with mild disc disease and radiculopathy; mild acromioclavicular arthropathy of the shoulders; learning disorder; mood disorder and bipolar disorder; and obsessive-compulsive disorder." (Tr. at 24.) At the third step, the ALJ determined that Jonas does not have an impairment or combination of impairments that meets or medically equals in severity any of the listed impairments. (Tr. at 24–26.)

Next, the ALJ reviewed the record to determine Jonas's residual function capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In finding Jonas's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms;

3

(3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also considered the relationship between Jonas and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entirety of evidence on the record; medical specialization; and other opinion evidence. 20 C.F.R. §§ 404.1527, 416.927; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

The ALJ determined that, based on the medically determinable evidence, Jonas has the RFC to perform less than the full range of light work—work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may also "require[] a good deal of walking or standing, or … sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ noted that Jonas has the following exertional and non-exertional limitations:

> [N]o lifting and carrying more than 20 pounds occasionally, 10 pounds frequently; no standing and walking more than six hours out of an eight-hour day and for no more than 30 minutes at one time; no sitting more than six hours out of an eight-hour day and for no more than an hour at one time. He can do unlimited pushing and pulling up to the exertional limits; no more than frequent fine fingering or gross manipulation; no more than occasional reaching to shoulder height, but no reaching overhead bilaterally; can do no more than frequent balancing, no more than occasional stooping, kneeling, crouching, crawling, or climbing ramps or stairs, but no climbing of ladders, ropes or scaffolds; no work around concentrated areas of cold; no work in concentrated areas of

>>full-body vibration; no more than simple, routine work; no contact with the general public, no more than occasional interaction with co-workers or supervisors; no more than occasional, if any, use of judgment or independent decision-making.

(Tr. at 26–27.)

The ALJ then continued to the fourth step and asked the vocational expert ("VE") whether a hypothetical individual with Jonas's age, education, work experience, and RFC could perform any of Jonas's prior jobs. (Tr. at 93–94.) The VE testified that this hypothetical individual could not perform any of Jonas's previous work. (Tr. at 94.) The ALJ moved on to the fifth step and asked the VE whether this hypothetical individual could perform any work in the regional or national economy. (Tr. at 94.) The VE stated that this hypothetical individual could perform the following jobs under the *Dictionary of Occupational Titles* ("*DOT*"): bench assembly, inspection, and grating/sorting. (Tr. at 94.) The ALJ therefore found Jonas not disabled. (Tr. at 31.)

The ALJ's decision that Jonas was not disabled from January 1, 2011 through December 21, 2012 became the final decision of the Commissioner when the Appeals Commission subsequently denied Jonas's request for review on February 24, 2014. (Tr. at 1–6.) Jonas has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal

quotations omitted). When reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the entire record, and "may not focus [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence." *Sias v. Sec'y of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). The court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## IV. ANALYSIS

On appeal, Jonas presents three issues for review. First, he argues that the ALJ failed to resolve a conflict between the VE's testimony and the job requirements stated in the *DOT*. Second, Jonas asserts that the ALJ failed to take his subjective complaints into account and therefore failed to develop the record by refusing to order more medical testing. Finally, he contends that the ALJ failed to adequately consider the relevant medical opinion evidence.

> *1. There is no conflict between the vocational expert's testimony and the job requirements listed in the* Dictionary of Occupational Titles.

The Social Security Rulings establish that the ALJ has an affirmative responsibility to ask the VE questions about any possible conflict between the VE's testimonial evidence and information provided in the *DOT*. SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). If it appears that a conflict exists between the *DOT* and the VE's evidence, the ALJ "will obtain a reasonable explanation for the apparent conflict." *Id.* If the VE's evidence is not consistent with the information written in the *DOT*, the ALJ must first resolve this conflict

6

before relying upon the VE's evidence in support of a determination that the claimant is or is not disabled. *Id.* The ALJ must then explain how he resolved the conflict. *Id.*

Jonas asserts that the VE's testimony was inconsistent with the *DOT* and that the ALJ failed to resolve this conflict before relying on the testimony. At the administrative hearing, the ALJ asked the VE to consider a hypothetical individual who could perform "no reaching above shoulder height and no more than occasional reaching at shoulder height." (Tr. at 95.) The VE responded that the three jobs she had previously named—bench assembly, final inspection, and grading/sorting—would be appropriate for such a hypothetical individual. (Tr. at 95.) Jonas notes that the *DOT* describes each of the three jobs named by the VE as positions that require "frequent" reaching (*see DOT* §§ 573.687-034, 706.684-022, 727.687-054), and the ALJ's RFC assessment found that Jonas could do no more than occasional reaching to shoulder height and no bilateral reaching overhead. (Tr. at 26.) Therefore, Jonas argues that this evidence is inconsistent and it was an error for the ALJ not to resolve this inconsistency.

The *DOT* does not, however, differentiate between overhead reaching, shoulder-height reaching, or any other direction or manner of reaching. *See* SSR 85-15, 1985 WL 56857 at *7 (Jan. 1, 1985). As such, a job that requires "frequent" reaching may or may not require reaching at or above shoulder height. Further, responding to a hypothetical question that included the limitation of "no reaching above shoulder height and no more than occasional reaching at should height," the VE stated that "the jobs [she] mentioned for the previously hypothetical would still be appropriate" but that she would reduce the number of available bench assembly jobs in the current economy by ten percent "because of the reaching problem." (Tr. at 95). The VE's estimated reduction in the number of jobs indicates that the VE, in fact, considered how Jonas's limitations would affect his options in

7

the current economy. *See e.g., Reese v. Comm'r of Soc. Sec.*, No. 99-4223, 2000 WL 1434585, at *1–3 (6th Cir. Sept. 18, 2000) (upholding an ALJ's determination that a claimant could perform other work after the VE reduced the estimated number of jobs available to reflect all of the claimant's potential limitations); *Hammond v. Chater*, No. 96-3755, 1997 WL 338719, at *1–3 (6th Cir. June 18, 1997) (same); *Hendrigsman v. Sec'y of Health & Human Servs.*, 890 F. Supp. 709, 714 (S.D. Ohio 1995) (finding that an ALJ may reasonably accept a VE's reduction in the number of jobs as conclusive).

The VE's testimony is not inconsistent with the *DOT*, and the ALJ asked sufficient questions to ensure consistency with the *DOT*. *See* SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Accordingly, the ALJ did not err in relying upon the VE's testimony regarding the number of jobs available in the current economy, and the ALJ's finding that Jonas can perform other work was decided pursuant to the correct legal standards and is supported by substantial evidence. *See Lindsley*, 560 F.3d at 604; *Reese*, 2000 WL 1434585, at *1–3.

> 2. *The ALJ properly considered Jonas's subjective complaints and did not fail to develop the record.*

The ALJ's credibility determinations are reviewed for substantial evidence. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 531 (6th Cir. 2014). As such, "courts generally defer to an ALJ's credibility determination because '[t]he opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly.'" *Id.* (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). The ALJ may discount the claimant's credibility to an extent where the ALJ finds contradictions among the objective

medical evidence, the claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Additionally, the claimant bears the burden of proof to show that he cannot perform his past relevant work through the first four steps of the evaluation process. *See Her*, 203 F.3d at 391. The claimant must meet this burden by providing medical and other evidence sufficient to support this assertion. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a), (c); *Wright-Hines*, 597 F.3d at 396. The reasoning behind this principle is simply that the claimant is in a better position than anyone else to provide evidence regarding his physical condition. *See Bowen v. Yuckert*, 428 U.S. 137, 146 n.5 ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). However, the ALJ has a duty to develop the record adequately before making a determination that the claimant is not disabled. 20 C.F.R. § 404.1545(a)(3). An ALJ may provide for a consultative examination or may request evidence from a claimant's various medical sources in order to develop the record further. 20 C.F.R. §§ 404.1512(e); 404.1517. Nevertheless, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing, is necessary." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009) (citing 20 C.F.R. § 404.1517); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.").

Here, Jonas argues that the ALJ improperly discounted his subjective complaints and failed to develop the record. For reasons stated below, however, the ALJ did not err in

9

his evaluation of Jonas's complaints or in seeking additional medical testing to develop the record.

### a. The ALJ properly discounted Jonas's subjective complaints.

Jonas argues that the ALJ erred in making his credibility finding and consequently failed to adequately consider Jonas's subjective complaints. Specifically, Jonas asserts that the ALJ misstated or overstated various pieces of testimony evidence relating to Jonas's ability to read and to take care of himself and, therefore, that the ALJ's credibility finding is tainted by these exaggerations. But this argument is without merit.

First, the ALJ found Jonas's testimony internally inconsistent. For example, the ALJ took note that Jonas stated that he could barely read anything but that he had an eighth or ninth grade education, could understand the correspondences regarding the notice of his disability hearing, and had been able to take a written driver's test without assistance. (Tr. at 28.) And the ALJ observed that Jonas testified that he had severe limitations in his hands and wrists due to carpal tunnel syndrome—including occasional swelling and that he needed help shaving—but that Jonas also testified that he was able to dress himself, use zippers and buttons, operate a TV remote control with either hand, wash dishes multiple times a week, use a cell phone, and use a door handle with either hand. (Tr. at 28.)

Second, the ALJ found Jonas's complaints inconsistent with the objective medical evidence, stating that the allegations of pain and limitation are not supported by the medical records. (Tr. at 28.) The ALJ noted that Jonas's objective test results consistently showed impairments that were deemed to be "mild" and that Jonas's complaints regarding these findings impaired his credibility. (Tr. at 28.)

Finally, Jonas asserts that the ALJ may not reject a claimant's subjective complaints because they are inconsistent with the ALJ's RFC finding. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003). A reviewing court must "accord an ALJ's credibility determinations great weight and deference, and 'are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013) (alteration in original) (quoting *Jones*, 336 F.3d at 476).

Overall, the ALJ did not err in making his credibility determination. He noted inconsistencies in Jonas's testimony, viewed Jonas's subjective complaints as contradicting the weight of the objective medical evidence in the record, and documented his analysis of Jonas's credible in the notice of decision. (Tr. at 28.) The ALJ's conclusion regarding Jonas's credibility is supported by substantial evidence and applies the correct legal standards. *See Lindsley*, 560 F.3d at 604.

      b.  <u>Additional medical testing was not necessary.</u>

Jonas contends that the ALJ should have ordered a consultative rheumatological examination to obtain more objective findings. He contends that both Dr. Haziq, who performed a consultative examination, and Dr. McLaughlin, his treating physician, felt it was necessary for him to have a consultative rheumatological evaluation in order to fully examine his impairments.

Given the objective medical evidence in the record, the ALJ concluded that such a consultative examination was not needed in order to find that Jonas is not disabled. (Tr. at

27, n.1.) Specifically, the ALJ stated that a further examination likely would not outweigh the "mild" findings that are present throughout the record. (Tr. at 27, n.1.) The ALJ explicitly mentioned many of the "mild" medical findings in the record. (Tr. at 28–29.) The record included the following findings of Dr. Haziq: x-ray images of Jonas's right shoulder showed mild acromioclavicular joint arthropathy with no evidence of other abnormalities (Tr. at 307); a range of motion test showing no limitation of movement in the cervical spine, elbows, wrists, and fingers with only mild limitation of movement in both shoulders and Jonas's right knee (Tr. at 302, 305); a CT scan of the lumbar spine showing mild disc disease with no evidence of spinal stenosis or focal nerve root impingement (Tr. at 308); and a long history of anxiety, depression, bipolar disorder, attention deficit hyperactivity disorder, and obsessive-compulsive disorder (Tr. at 303). Dr. Carr also performed a nerve conduction study and electromyelogram ("EMG") and found median and ulnar nerve compromises that were classified as "mild." (Tr. at 337.)

The amount of unremarkable medical evidence supports the ALJ's decision not to order additional testing. Jonas failed to develop a record that would justify additional testing. The ALJ is not obligated to order futile testing, *Hayes*, 357 F. App'x at 675–77, and, accordingly, the ALJ's decision not to supplement the record with additional medical tests applies the correct legal standards and is supported by substantial evidence. *See Lindsley*, 560 F.3d at 604.

    3. *The ALJ adequately considered the relevant medical opinion evidence.*

Jonas argues that the ALJ failed to give sufficient deference to the opinions of Dr. McLaughlin as he failed to discuss all of the factors that must be considered in evaluating the opinion of a treating source. He alleges that there is no medical basis for rejecting Dr.

McLaughlin's opinion and that the ALJ should not have given more weight to Dr. Guerrero, a state agency physician, than to Dr. McLaughlin.

The ALJ is required to "evaluate every medical opinion" in the record. *See* 20 C.F.R. § 404.1527(c). Not all medical opinions, however, are treated equally. Opinions from medical sources who regularly treat the claimant "must be given 'controlling weight' if two conditions are met: (1) the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (alteration in original) (citing 20 C.F.R. § 404.1527(c)(2)). As such, the ALJ must defer to a treating physician's opinions or otherwise give "good reasons" for not doing so. 20 C.F.R. § 404.1527(c)(2). Ultimately, every medical opinion must be evaluated for supportability and consistency, and the ALJ will give more weight to medical opinions that provide more detailed supporting explanations and are more consistent with the record as a whole. *Id.* "Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1527, 416.927). After reviewing a treating source's medical opinion under § 404.1527(c), the ALJ must discuss the weight given to the opinion and must provide his rationale for giving that amount of weight. *Gayheart*, 710 F.3d at 376. The ALJ's rationale must be supported by the evidence in the record and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). However, the ALJ need not provide a lengthy or verbose rationale. *Norris*, 461 F. App'x at 440.

Here, the ALJ properly evaluated the medical opinion evidence. The ALJ took note of the various tests that Dr. McLaughlin ordered, performed, and analyzed throughout the record. He remarked that Dr. McLaughlin's notes showed a highly elevated rheumatoid factor with polyarthralgia and x-rays showing multiple bone spurs, osteoarthritis, and bilateral carpal tunnel syndrome that Dr. McLaughlin felt placed limitations on Jonas to less than sedentary work activities. (Tr. at 29.) However, the ALJ noted that Jonas benefited from the use of the medication, Mobic, for his arthritis and that other clinical findings showed only minimal calcaneal spurring and mild carpal tunnel syndrome. (Tr. at 29.) The ALJ therefore concluded that "[b]ased on Dr. McLaughlin's record of treatment and clinical findings, as well as the overall evidentiary documentation, [he] gives Dr. McLaughlin's opinions little weight". (Tr. at 29.)

Additionally, there are numerous findings that Jonas's testing showed only "mild" results (Tr. at 308, 309, 310, 311, 337, 356, 359), and other tests that showed either "minimal" results or nothing at all (Tr. at 322, 358, 360). Dr. Haziq found that while Jonas's gait appeared "slow, cautious, and antalgic", Jonas could walk "without assistive devices or ambulatory aids", "stand unassisted", and "rise from a seat and step up and down from the examination table". (Tr. at 301.) Dr. Haziq also noted that while Jonas's experienced pain and a limited range of motion in various manners, Jonas was able to pick up coins with both hands and could write with his dominant hand without issue, and his range of motion was largely within normal levels. (Tr. at 301–06.) Dr. Guerrero's less restrictive findings were based upon the entirety of the record, including Dr. Haziq's examination and findings. (Tr. at 113–26.)

Overall, the ALJ properly analyzed the medical record evidence, and the evidence supports the ALJ's finding that Jonas is not disabled. The ALJ expressly noted Dr.

14

McLaughlin's findings and described how much weight the ALJ gave to these findings. Further, the ALJ justified the amount of weight given to Dr. McLaughlin's opinion through the extensive evaluation of Dr. Haziq's medical evidence (Tr. at 299–307) and the admittedly "mild" findings from various tests performed on Jonas (Tr. at 28, 58–60, 308, 309, 310, 311, 337, 344, 356, 359). Therefore, the ALJ applied the correct legal standards and his decision is supported by substantial evidence. *See Lindsley*, 560 F.3d at 604.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 12) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 14) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated April 28, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY